UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**PETER JAMES WILLIAMS**                                             CASE NO. 11-11933
**ALFREDA RODNEY WILLIAMS**

DEBTORS                                                               CHAPTER 7

**MARTIN A. SCHOTT, TRUSTEE,**
**THE UNITED STATES OF AMERICA,**
**GUARANTY BANK & TRUST COMPANY,**
**RYLAND ENTERPRISES, INC. and**
**AMERICAN FORESTRY SERVICE OF MISS., INC.**

PLAINTIFFS

V.                                                                    ADV. NO. 13-1001

**PETER JAMES WILLIAMS**
**ALFREDA RODNEY WILLIAMS**

DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs Martin A. Schott, chapter 7 trustee, the United States of America, Guaranty Bank & Trust Company, Ryland Enterprises, Inc., and American Forestry Service of Miss., Inc., sued to deny a discharge to debtors Peter and Alfreda Williams under 11 U.S.C. §727(a)(4). Plaintiffs alleged that the debtors knowingly and fraudulently misstated information in, and omitted information from, their schedules of assets and debts and statement of financial affairs; testified falsely at their meeting of creditors; and lied under oath when the creditors examined

them pursuant to Fed. R. Bankr. P. 2004.  The evidence established that the Williamses are not entitled to a discharge.[1]

## Facts

Peter James Williams and Alfreda Rodney Williams, no strangers to the bankruptcy process, began their fourth bankruptcy case on December 14, 2011 as *pro se* chapter 12[2] debtors.  After the court later converted the case to a chapter 7 liquidation[3] the Williamses failed to attend a meeting of creditors under 11 U.S.C. '341(a) on the date first assigned.[4]  They hired a lawyer only after the court ordered the debtors to show cause why they should not be sanctioned for their absence from the creditors' meeting.[5]  In late September 2012, the chapter 7 trustee and creditors finally questioned the Williamses in a creditors' meeting.  That the chapter 7 meeting of creditors took place nine months after the initial chapter 12 case filing and almost four months after conversion, and then only after a court order suggesting they may be sanctioned, was the first hint of the debtors' indifference to their disclosure obligations as debtors, or at worst their

---

[1] The defendants did not appear for trial though the court continued the trial twice, in one instance at defendants' request to locate counsel to represent them in the adversary proceeding.  *See* Motion to Continue Adversary Proceeding Hearing (P-19).  However, the Williamses never hired a lawyer and so appeared *pro se* at the final pre-trial and scheduling conference, where they participated in selecting a trial date and agreed to all pre-trial deadlines.  *See* Order Following Scheduling Conference (P-23).  Despite this, they submitted no pretrial order inserts, did not sign the draft pretrial order and delivered no trial exhibits.  *See* Pre-trial Order (P-28).  Nor did the Williamses contact chambers or the clerk of court with questions or concerns about those documents or the trial date as the trial drew near, or even after trial.  Intentional failure to appear at an objection to discharge hearing itself may be a basis for denial of discharge.  *See, e.g., In re Larrieu*, 230 B.R. 256, 271 (Bankr. E.D. Pa. 1999) and *In re Robson*, 154 B.R. 536, 539 (Bankr. E.D. Ark. 1993).

[2] Bankruptcy Code chapter 12 provides for the adjustment of the debts of a family farmer or fisherman with a regular annual income from that business.

[3] The court converted the case to a chapter 7 liquidation on motion of the same parties that are plaintiffs in this adversary proceeding.  *See* June 5, 2012 order converting case (P-62).

[4] Proceeding Memo and Minutes of the chapter 7 §341 Meeting (P-84).

[5] Order to Show Cause (P-85).

unrelenting efforts to impede administration of their case, since seeking the bankruptcy court's protection.

### 1. *Undisclosed Prepetition Transfers*

The plaintiffs complain that the Williamses repeatedly made false statements in their original schedules and statement of financial affairs, three sets of amended schedules and two sets of amended statements of financial affairs given under penalty of perjury, and also in sworn oral testimony at meetings of creditors and during examinations under Fed. R. Bankr. P. 2004. Chief among the debtors' allegedly false statements were repeated declarations that they had not transferred anything of value within the year before their bankruptcy filing.[6] The first of these alleged untruths came during their very first meeting of creditors, the chapter 12 meeting, which took place January 12, 2012. At that meeting the debtors testified under oath that they had not transferred or disposed of any asset outside of the normal course of business during the year before they filed bankruptcy.[7]

Three months after the case's conversion to a chapter 7 liquidation, but before the chapter 7 meeting of creditors, the Williamses finally retained counsel. Their lawyer filed a number of amendments to the debtors' schedules and statements but none of those amendments disclosed prepetition transfers responsive to Statement of Financial Affairs question 7. At the September 2012 chapter 7 meeting of creditors, the debtors again swore, as they had at their chapter 12

---

[6] Question 7 of Official Form B-7, the Statement of Financial Affairs, requires a list of "all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient." (Exhibit P-6). Question 10(a) instructs debtors to "list all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." (Exhibit P-6) On their original (Exhibit P-6) and amended Statement of Financial Affairs (Exhibit P-9), the debtors answered "None" to Question 7 and Question 10

[7] Transcript of January 12, 2012 §341 meeting of creditors, p. 34, ll. 8-15, Exhibit P-23.

3

meeting of creditors in January 2012, that they had not transferred or disposed of any property in the year before their bankruptcy filing.[8]  When that meeting ended, the chapter 7 trustee directed the Williamses to amend their schedules and statement of financial affairs.  He also asked them for an extensive list of documents, including a list of all expenses they had paid before filing (with corroborating documents) from $23,000 they admitted receiving from a member of the church where Peter Williams is pastor, Upper Room Apostolic Church.[9]  The trustee's proceeding memo[10] for that meeting memorialized his instructions to the debtors.

     The debtors' lawyer later gave the trustee documents showing that Peter and Alfreda Williams had made substantial payments to or on behalf of their adult children within a year before the bankruptcy, which completely discredited their sworn answers on the Statement of Financial Affairs.  The documents established that the debtors gave their adult children cash totaling $26,364.02 within seventy-five days before bankruptcy to pay housing and other expenses, and to make payments on a loan secured by one son's truck.[11]  The Williamses gave their adult children $8675 of that sum in cash on a single day, October 24, 2011.[12]

---

[8]  Transcript of September 27, 2012 §341 meeting of creditors, p. 23, ll. 12-15, Exhibit P-25.

[9]  The debtors first testified at the chapter 12 meeting of creditors that church members Albertha and Lester Williams had given them $23,000 as a tithe in October 2011 (Exhibit P-23, p. 72, ll. 25; p. 73, ll. 1-9).  They testified about the tithe again at the chapter 7 meeting of creditors, where they disclosed that they'd deposited the $23,000 into debtor Alfreda Williams's personal bank account (Exhibit P- 25, p. 85, ll. 17-25; p. 86, ll. 1-25).

[10]  Proceeding Memo and Minutes of the Chapter 7 §341 Meeting, p. 2 (P-110).  Chapter 7 trustees in this district file into the bankruptcy case record a "Proceeding Memo and Minutes of the Chapter 7 341 Meeting" memorializing parties' appearances and other information and instructions imparted to debtors at the meeting of creditors.

[11]  Special Gift Use of Funds Breakdown (Exhibit P-13).  The trustee sued to recover the transfers from the debtors' children in adversary proceedings nos. 13-1069, 13-1070 and 13-1071.  The court granted the trustee's motions to approve settlements in these cases on April 30, 2014.

[12]  Exhibit P-13.

*2. Other False Statements*

The other oaths the plaintiffs contend are false and should result in the Williamses' loss of their discharge include:

(1) intentionally omitting from the original schedules assets comprising:

- two trucks in which Peter Williams had an interest,
- two classic cars—a 1966 Pontiac GTO and a 1961 Chevrolet Impala, and
- Alfreda Williams's interest in inherited immovable property;

(2) continuing to omit from three different sets of amended schedules the two classic cars and continuing to omit the two trucks in which Peter Williams had an interest from the first set of amended schedules filed on January 27, 2012; and

(4) testifying at the January 2012 chapter 12 meeting of creditors, the April 2012 Fed. R. Bankr. P. 2004 examination and the September 2012 chapter 7 meeting of creditors that the information on their original schedules, original statement of financial affairs and two sets of amended schedules and statements of financial affairs were true and correct, despite many omissions and misstatements.[13]

The evidence established that the debtors omitted the vehicles and inherited immovable property from their original schedules. They compounded their misconduct when they amended the schedules without completely correcting the omissions. First, the debtors did not list the 1967 Pontiac GTO and 1961 Chevrolet Impala on amended schedules filed in January, September and October 2012, even though Peter Williams admitted under oath at the April 2012

---

[13] Transcript of January 12, 2012 meeting of creditors, Exhibit P-23, p. 8-9. Transcript or Rule 2004 examination, Exhibit P-24, p. 6, ll. 12-21. Transcript of September 27, 2012 meeting of creditors, Exhibit P-25, 89, ll. 13-25; p. 90, ll. 1-24. Alfreda Williams admitted during the 2004 examination that the first amended schedules continued to omitted creditors D&M Carquest and Avoyelles Tire Center.

...

Rule 2004 examination that he owned both cars.[14] At the chapter 7 meeting of creditors Mr. Williams testified that he had surrendered the cars to Select Motors hoping that it would sell the cars to pay for its repairs to them,[15] although the debtors actually did not characterize the transaction as a surrender before filing their second amended statement of financial affairs in October 2012.[16] Thus, only after three examinations under oath and repeated amendments of their sworn schedules and statement of financial affairs did the debtors truthfully and accurately explain what happened to the two classic cars.

Second, Peter Williams's one-half interests in the 2007 Ford F-150 and 2009 Dodge Ram[17] were listed as an asset for the first time in the debtors' second amended schedules filed September 26, 2012,[18] the day before the chapter 7 meeting of creditors and nearly nine months after they started the bankruptcy process. In fact, this was a complete about-face from the debtors' earlier contentions about the vehicles, because Mr. Williams testified at the chapter 12 meeting of creditors in January 2012 that he had transferred the two trucks to his sons in June 2010, although at that time he could provide no act of sale, donation or other evidence of the transfers.[19]

---

[14] Exhibit P-24, p. 137, ll. 21-25; p. 138, ll. 1-12. Contrary to his testimony at the Rule 2004 examination, at the chapter 12 meeting of creditors Peter Williams stated that Select Motors had repossessed the two cars. Exhibit P-23, p. 139, ll. 1-7.

[15] Exhibit P-25, p. 40, ll. 13-25; p. 41, ll. 1-7. The trustee obtained an order allowing him to sell the 1961 Impala as an asset of the estate for a minimum of $22,500 and pay Select Motors $16,274 to satisfy its lien, netting approximately $6226 for the estate. August 12, 2013 Order (P-228).

[16] On the September 26, 2012 amended statement, in response to Question 10 the debtors answered that in 2010 they transferred to Select Motors, Inc. the titles to a 1961 Chevrolet Impala and a 1966 Pontiac GTO.

[17] The Ford truck is titled to Peter Williams and Cornelius Williams; the Dodge, in the names Peter Williams and Nathaniel Williams (Exhibit P-16, attachment C). The titles were issued June 25, 2010.

[18] Exhibit P-8, p. 4.

[19] Exhibit P-23, p. 140, ll. 1-25, p. 141, ll. 1-25, p. 142, ll. 1-1-6. Mr. Williams also testified at the chapter 12 creditor meeting that Southern Heritage held a mortgage on the trucks. Exhibit P-23, p. 141, ll. 24-25, p. 142, ll. 1-2. The debtors listed those mortgages on their September 26, 2012 amended schedule D (Exhibit P-8). In fact, the

Finally, the debtors omitted from their schedules Mrs. Williams's inherited interest in land in New Roads, Louisiana until it came to light at the first January 12, 2012 meeting of creditors in response to the trustee's questions.[20] They then included the property in the January 27, 2012 schedule amendment.

## Law and Analysis

### 1. *A Debtor's False Statements or Omissions Can Bar Discharge*

The Bankruptcy Code denies a discharge to a debtor who "knowingly and fraudulently, in or in connection with the case … made a false oath or account." 11 U.S.C. §727(a)(4)(A). To prevail under section 727(a)(4)(A), the plaintiffs must prove that:

(1) the debtors made a statement under oath;

(2) the statement was false;

(3) the debtors knew the statement was false;

(4) the debtors made the statement with fraudulent intent; and

(5) the statement related materially to the bankruptcy case.

*In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005), quoting *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

A false oath that will cost a debtor his discharge includes "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *Id.* "An omission of an asset can constitute a false oath." *Pratt*, 411 F.3d at 566. The subject matter of a false oath is "material," and therefore will result

---

list of the debtors' payments for their children, Exhibit P-13, includes as a single line item reimbursement of four truck notes for Cornelius Williams, even though Peter Williams testified at the January 2012 meeting of creditors that he transferred the trucks to his sons "[b]ecause they were old enough to pay for them." Exhibit P-23, p. 141, ll. 17-21.

[20] Exhibit P-23, p. 38, ll. 14-25, p. 39, ll. 1-25.

7

in denial of discharge, if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property. *In re Chalik,* 748 F.2d 616, 618 (11th Cir. 1984), *citing In re Steiker,* 380 F.2d 765, 768 (3d Cir. 1967).

Bankruptcy Code section 727(a)(4)(A) is intended to ensure that debtors provide complete information about their financial affairs and assets to those interested in the administration of the bankruptcy estate, to spare them the need for the further examinations or investigation to determine whether the debtors have provided truthful and accurate information. *Oldendorf v. Buckman,* 173 B.R. 99, 104 (E.D. La. 1994). Even if a debtor believes that his assets are worthless or of minimal value to creditors, the debtor must disclose all his assets fully and accurately. *Id.* at 105. Furthermore, testimony, sworn schedules and statements of financial affairs comprising more than one falsehood, *together with a failure to clear up all inconsistencies when filing amended schedules*, may constitute reckless indifference to the truth, and support a finding that a debtor intended to deceive the court, trustee and creditors. *Id.* (Emphasis added).

2. *The Williamses Knowingly and Fraudulently Made False Oaths That Bar Discharge Under 11 U.S.C. §727(a)(4)(A)*

The evidence established that debtors failed to disclose that they gave or paid for the benefit of their children nearly $23,000 within two months before their December 2011 bankruptcy filing, money they had received from a church member only two months earlier. Moreover, the debtors failed to reveal in their bankruptcy filings that they'd disposed of two valuable classic cars in 2010, or their interest in trucks their adult sons drove, or Alfreda Williams's interest in inherited property. That information came to light only after parties in interest unearthed them over a prolonged time and sometimes only then in response to specific

8

questioning of the debtors. The evidence does not support a finding that the debtors' omissions were inadvertent or immaterial.

The plaintiffs have proven that the Williamses made multiple false oaths in their schedules, statements of financial affairs, as well as in their sworn testimony at meetings of creditors and a Rule 2004 examination. The false oaths were material because they related to the debtors' assets and their disposition of property before bankruptcy. The debtors' many misstatements and omissions were not *completely* corrected or explained until they filed their second amended schedules and statements, ten months after they commenced their bankruptcy, despite examination by two trustees and more than one creditor. The bankruptcy process cannot condone debtors' resistance to full and accurate disclosure in the manner of the Williamses.

Perhaps a single error in the debtors' schedules, or a modest mistake in the statement of financial affairs, could be attributed to the debtors' initially having taken on their own representation, or to carelessness or confusion. However, even after several amendments and the retention of counsel to assist them, the Williamses continued to omit from their filings valuable assets and other important financial information. Their behavior betrays at best indifference, and at worst a calculated effort to mislead parties in interest. The debtors' cavalier attitude to the full disclosure demanded of all debtors also signals their reckless indifference to the truth. The evidence supports a finding that the Williamses made their false oaths knowingly and with intent to deceive.

**Conclusion**

The evidence established that debtors Peter and Alfreda Williams made false oaths that must result in loss of their chapter 7 discharge under 11 U.S.C. §727(a)(4)(A). The court will by separate judgment deny the debtors' discharge.

Baton Rouge, Louisiana, May 2, 2014.

<u>**s/Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE